**NATIONAL LABOR RELATIONS BOARD, Petitioner, .**

**v.**

**TENNESSEE PACKERS, INC., FROSTY MORN DIVISION, Respondent.**

**No. 17125.**

United States Court of Appeals
Sixth Circuit.

June 21, 1967.

George B. Driesen, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Theodore Martineau, Atty., N. L. R. B., Washington, D. C., on brief.

Asa R. Ambrister, Nashville, Tenn., and George V. Gardner, Washington, D. C., for respondent.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is before the Court upon petition of the National Labor Relations Board for enforcement of its order, issued August 5, 1965, against respondent, Tennessee Packers, Inc., Frosty Morn Di-

vision. The Court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred in Clarksville, Tennessee, within this judicial circuit. Section 160(e), Title 29, U.S.C. The Board determined that the respondent committed unfair labor practices in violation of Sections 158(a) (1) and (5), Title 29, U.S.C., by refusing to bargain with the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local No. 405 (the union), which had been certified by the Board as the exclusive bargaining representative of respondent's employees. The respondent, a Tennessee corporation, engaged in the business of processing and packaging meat products, admits its refusal to bargain, but contends that the Board's certification of the union was invalid.

The union filed a petition for a representation election with the Board on August 26, 1963. On September 13, 1963, the respondent and the union entered into a "Stipulation for Certification Upon Consent Election." The election took place, as scheduled, on September 27th and 28th, 1963. The vote was 117 to 115 in favor of the union. Thirty-five votes were challenged. On October 2, 1963, the union filed objections to conduct of the respondent which it alleged occurred immediately preceding the election and prevented the employees from exercising a free and uncontrolled choice. The union sought to have the election set aside and a new election ordered by the Board. Seven acts of misconduct were enumerated. Only the fourth objection need be considered here. The Regional Director recommended that the others be overruled and the Board sustained the recommendation. It was alleged in the fourth objection that,

> "Employees were called together for a so-called 'safety meeting' and at this time were told by management officials to sign a petition stating that they did not want a union."

The Director reported to the Board on December 6, 1963. As to the challenged ballots, the Director recommended that seventeen of the challenges be sustained and those ballots not be counted. He further recommended that sixteen of the ballots be counted, the challenges being overruled as to them. No determination was made with reference to the challenges to the ballots of Black and Lane, since actions involving them were pending before the Board.

With reference to objection four, the Director reported that his investigation revealed that at about three weeks before the election, one of respondent's drivers approached Superintendent Barnes and complained that some drivers were "laying out" when they did not want to take a particular run. Barnes appointed a committee of four drivers to draw up a set of proposed rules to remedy the situation. These drivers met and drew up a set of proposed rules which were submitted to management. About two weeks before the election, representatives of management met with the drivers in the conference room of the employer's plant. The drivers arrived at the conference room before the representatives of management. While waiting, an anti-union petition was circulated among the drivers and funds were solicited for buttons and literature to be circulated among the rank and file employees. This discussion stopped when supervisors arrived. At this meeting, in the presence of management, the proposed rules were adopted by the drivers and they were approved by Barnes. The rules concerned sleeping hours and provided penalties for missing assigned runs.

The Director found that the drivers were dissatisfied with existing conditions, that the rules were for the admitted purpose of remedying the situation, that they affected working conditions and were a benefit to employees He held that dealing directly with employees and granting benefits during the course of a union's organizing campaign constitutes interference with an election. He recommended that objection four be sustained on the basis of the facts adduced by his investigation.

The Director's concluding recommendation to the Board was that the sixteen

ballots to which challenges were over-ruled be opened and counted. He further recommended that if the revised tally of ballots did not show a majority of votes favorable to the union, the election should be set aside because of the conduct of the respondent in accordance with his findings on objection four.

On December 13, 1963, the respondent filed exceptions to the Director's report. Its first exception was that the Director's findings were not responsive to the objection made by the union; that the finding that the rules effected a change in working conditions is "based on no facts disclosed by the Report;" and that there was "no showing that Management granted 'improved working conditions to the drivers' or that Management was dealing directly with employees and granting benefits in the course of a union's organizing campaign, and thus interfered with an election." In its second exception, the respondent raises the question as to whether the alleged misconduct found in objection four occurred before August 26, 1963, the cut-off date before which the respondent could not be charged with interfering with an election. See Goodyear Tire & Rubber Co., 138 N.L.R.B. 453. Respondent, in its exceptions, did not request a hearing before the Board.

No hearing was held by the Board to consider the exceptions of the respondent and on May 6, 1964, the Board issued its decision affirming the findings of the Director and approving his recommendations. The Board noted "the absence of any adequate explanation by the Employer as to why it did not defer its granting of this benefit until after the election." The Board overruled the challenges to the ballots of Black and Lane on the ground that the Board had found that they were dismissed from their employment because of union activities. Thus, there were eighteen valid votes to be counted. The Board ordered these ballots counted and issued a contingent order directing that the election be set aside and a second one held in the event that the new tally did not give the union a majority of the votes.

The union lost the election under the revised tally and in accordance with the contingent order of the Board a second election was held on June 19th and 20th, 1964. Of the 294 votes cast in this election, 140 were for the union, 115 against the union, and 39 were challenged. Among the challenged ballots were seven cast by truck drivers, employed by respondent, who did not operate out of or reside in Clarksville. On July 2, 1964, the Director ordered a hearing for the purpose of determining the eligibility of the voters whose ballots were challenged.

There was a hearing before a Hearing Examiner, at which both parties were given an opportunity to be heard. The Examiner overruled challenges to twenty-four ballots, including those of the seven out-of-town drivers. He sustained challenges to fifteen of the contested ballots. Both the union and the respondent filed exceptions to the findings and recommendations of the Examiner. The Board issued its order on December 11, 1964, by which it sustained twenty-one challenges and overruled eighteen. It reversed the Hearing Examiner and sustained the challenges to the seven out-of-town truck drivers. Since the eighteen ballots would not affect the outcome of the election, the Board did not order them opened and counted. The Board then recognized the majority status of the union and certified it as the exclusive bargaining representative of respondent's employees.

The union filed a charge on March 11, 1965, for failure to bargain, and on April 5th the Regional Director issued a complaint alleging that the respondent, after numerous requests to bargain collectively, has refused to do so, in violation of Section 158(a) (5) and (1), Title 29, U.S.C. In its answer the respondent admitted that it refused to bargain with the union. The Board's General Counsel moved for judgment on the pleadings, and the Trial Examiner issued an order to show cause why such motion should not be granted. The respondent then

amended its answer to challenge the validity of the certification. Respondent alleged that the first election was unlawfully set aside, and that the Board erroneously disposed of certain challenges following the second election. On June 10, 1965, the Trial Examiner issued his recommended decision in which he denied respondent a hearing on the certification issues, and found that respondent had violated Section 8(a) (5) and (1) of the Act (Section 158(a) (5) and (1), Title 29, U.S.C.) by its admitted refusal to bargain with the union.

On August 31, 1965, the Board affirmed this finding of the Trial Examiner. The Board affirmed the Trial Examiner's refusal to permit the respondent to relitigate its objections previously considered by the Board in the certification proceedings. The Board ordered respondent to cease and desist from refusing to bargain in good faith with the union, and affirmatively required the respondent to bargain with the union upon request and to post appropriate notices. The Board petitions for enforcement of the order.

Respondent assigns as error the failure of the Board to afford it a hearing on the issues raised in the Board's determination to set aside the first election. Respondent claims that either the Regional Director or the Board erred in not holding a hearing at some stage in these proceedings before setting aside the election.

The consent election agreement signed by the parties provided that "hearing and notice thereof, Direction of Election, and the making of Findings of Fact and Conclusions of Law ,by the Board prior to the election are hereby expressly waived." This provision brings the agreement within the ambit of Section 102.62(b) of the Board's Rules and Regulations.[1] (29 C.F.R. 102.62(b).) Section 102.69(c), 29 C.F.R. states that if objections are filed to "conduct affecting the result of the election" the Regional Director shall investigate them, and, "if a consent election has been held pursuant to § 102.62(b)," prepare a report which shall be forwarded to the Board. This procedure differs from that used following an election held other than in pursuance of a 102.62(b) consent election agreement, where the Regional Director may hold a hearing to resolve any "substantial and material factual issues" that may exist. 29 C.F.R. 102.69(c).[2]

Section 102.69(e) (1), 29 C.F.R., provides that:

"In a case involving a consent election held pursuant to § 102.62(b), if exceptions are filed, either to the report on challenged ballots or objections, or both if it be a consolidated report, and * * * it appears to the Board that such exceptions raise substantial and material factual issues, the Board may direct the regional director or other agent of the Board to issue and cause to be served on the parties a notice of hearing on said exceptions before a hearing officer."

Thus only in those instances in which the exceptions raise "substantial and material factual issues," may the Board order the

---

1. "Where a petition has been duly filed, the employer and any individuals or labor organizations representing a substantial number of the employees involved may, with the approval of the regional director, enter into an agreement providing for a waiver of hearing and a consent election leading to a determination by the Board of the facts ascertained after such consent election, if such a determination is necessary."

2. "If the election has been conducted pursuant to a direction of election issued following any proceeding under § 102.67, the regional director may (1) issue a report on objections or challenged ballots, or both, as in the case of a consent election pursuant to § 102.62(b), or (2) exercise his authority to decide the case and issue a decision disposing of the issues and directing appropriate action or certifying the results of the election. In either instance, such action by the regional director may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, on the basis of a hearing before a hearing officer, designated by the regional director."

Regional Director to direct a hearing on the exceptions. The respondent alleges that his exceptions do raise "substantial and material factual issues" requiring a hearing.

In order to raise "substantial and material factual issues", it is necessary for a party to do more than question the interpretation and inferences placed upon the facts by the Regional Director. N. L. R. B. v. National Survey Service Inc., 361 F.2d 199 (C.A. 7); N. L. R. B. v. J. R. Simplot Company, 322 F.2d 170 (C.A. 9); Macomb Pottery Company v. N. L. R. B., 376 F.2d 450 (C.A. 7); N. L. R. B. v. J. J. Collins' Sons, Inc., 332 F.2d 523 (C.A. 7); N. L. R. B. v. Sun Drug Co., 359 F.2d 408 (C.A. 3). It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. N. L. R. B. v. National Survey Service, Inc., supra; N. L. R. B. v. J. R. Simplot Company, supra; Macomb Pottery Company v. N. L. R. B., supra. Mere disagreement with the Regional Director's reasoning and conclusions do not raise "substantial and material factual issues." This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof.

The purpose behind the rule which requires a hearing only when "substantial and material factual issues" are raised is to avoid lengthy and protracted proceedings, and eliminate unnecessary delays in certifying the results of an election. If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act. The cases relied upon by respondent in support of its contention that it is entitled to a hearing, all deal with cases in which the court determined that "substantial and material factual issues" were raised, and therefore held that the Board erred in not ordering a hearing. United States Rubber Company v. N. L. R. B., 373 F.2d 1602 (C.A. 5); N. L. R. B. v. Capitol Bakers, Inc., 351 F.2d 45 (C.A. 3); N. L. R. B. v. Joclin Mfg. Co., 314 F.2d 627 (C.A. 2); N. L. R. B. v. Lord Baltimore Press, Inc., 300 F.2d 671 (C.A. 4); N. L. R. B. v. Dallas City Packing Co., 230 F.2d 708 (C.A. 5); N. L. R. B. v. Poinsett Lumber and Mfg. Co., 221 F. 2d 121 (C.A. 4). In N. L. R. B. v. Sidran, 181 F.2d 671 (C.A. 5), cited by respondent, the Court could only have held that the Board erred in denying a hearing if "substantial and material factual issues" were raised.

Respondent's exceptions to the report of the Regional Director filed December 13th, as heretofore described, do not state specific objections or indicate that material factual issues exist. They do not clearly put in issue the correctness of the Director's findings, but merely attack the correctness of his conclusions and inferences drawn from the facts uncovered in his investigation. It was proper for respondent to question the conclusions of the Director, but to require a hearing it was incumbent upon it to state what evidence it would produce to establish that the conclusions were incorrect. Respondent fails to suggest any material facts which would be developed at a hearing. A hearing "would not deal with matters of factual proof but would serve only to permit argument which could as well have been presented in the writing itself." N. L. R. B. v. J. R. Simplot Company, supra.

Respondent does intimate that the statement in the report that the truck

driver approached respondent's superintendent "approximately three weeks before the election" is incorrect. To support this assertion, respondent relies upon an affidavit furnished the Director by Superintendent Barnes, in which Barnes states that this initial encounter "occurred but a short time before the election, possibly three weeks or a month." Even taking the longest period of time suggested by the statement, one month, the meeting occurred at the earliest on August 27, 1963, after the filing of the petition for representation. In addition Respondent's exception to this finding is no more than a statement that it is "highly speculative," and does not state, or offer any proof to show that the encounter occurred on a day prior to filing the representation petition. Moreover respondent does not except to the fact that "approximately two weeks" prior to the election, the respondent approved the rules adopted by the drivers. Nor does respondent explain why it could not wait until after the election to effect the changes in the rules. Therefore regardless of when the first encounter was made, if the adoption of the rules was sufficient to set aside the election, it was correct for the Board to do so, inasmuch as this action unquestionably occurred after the petition for a representation election was filed. Because respondent's exceptions to the Regional Director's report did not raise any "substantial and material factual issues", but merely disputed its reasoning and conclusions, the Board did not abuse its discretion in denying respondent a hearing on the matter.

Respondent further objects to the Director's action in sustaining the union's fourth objection because the Director "reconstruct(s) union's objection No. 4 making it have an entirely different meaning and on the basis of such reconstruction sets aside the election." The Regional Director's report on this objection dealt with the adoption of new work rules rather than the anti-union petition referred to in objection four. In order to promote an election that is free from coercion, pressure and prejudice, the Regional Director and the Board should have the discretion to consider any facts related to the election, which are uncovered in the course of its investigation. Otherwise the Board would become impotent to carry out the purposes of the Act. In the course of investigating what had happened at the "safety meeting," the Regional Director considered the respondent's role in the adoption and effectuation of the rules. Where related facts concerning misconduct are uncovered in the investigation of the objections filed by a party, it is proper for the Director and the Board to set aside an election on these facts. N. L. R. B. v. Dal-Tex Optical Company, 310 F.2d 58 (C.A. 5). See also, National Labor Relations Board v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243.

Respondent also claims that it was unlawfully denied a hearing on these same issues in the unfair labor practice charge under direct review herein. Section 160(b), Title 29 U.S.C. provides:

"* * * The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint."

This requirement, respondent argues, has not been met because it was not permitted to relitigate its objections previously considered by the Board in the certification proceedings. However, it is a well established principle of law that the Board is bound by its own prior determinations in representation proceedings, and is not required to grant a hearing on representational issues ancillary to an unfair labor practice charge, unless the party requesting such a hearing has some newly discovered evidence. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251, rehearing den. 313 U.S. 599, 61 S.Ct. 1093, 85 L.Ed. 1551; N. L. R. B. v. National Survey Service, Inc., supra; N. L. R. B. v. B. H. Hadley, Inc., 322 F.2d 281 (C.A. 9). A party, in the absence of newly discovered

evidence, is entitled to only one opportunity to question the Board's certification procedures. To require that the Board reopen and reconsider a matter that was subject to prior consideration would unnecessarily prolong the controversy, and prevent the orderly settlement of labor disputes. Not having presented any newly discovered evidence, the Board was not required, in the present unfair labor practice proceedings, to grant respondent a hearing on its objections to the certification procedures.

█ Respondent further argues that its conduct in approving and putting into effect the rules adopted by the drivers about two weeks prior to the election, cannot be the basis for setting aside the first election. The Board found that such conduct "interfered with employees' free choice in the election and warrants setting aside the election herein." Our review is limited to determining whether there is substantial evidence to support this finding. Section 160(e), Title 29, U.S.C. We are not free to consider the issue de novo, and cannot choose between conflicting inferences, even though we might arrive at a different conclusion. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Walton Manufacturing Company, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829.

█ Congress has vested the Board with considerable discretion in supervising and regulating representation elections. N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322; N. L. R. B. v. Blades Manufacturing Corporation, 344 F.2d 998 (C.A. 8); National Van Lines, Inc. v. N. L. R. B., 273 F.2d 402 (C.A. 7); N. L. R. B. v. Shirlington Supermarket, 224 F.2d 649 (C.A. 4), cert. den. 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801; Foreman & Clark, Inc. v. N. L. R. B., 215 F.2d 396 (C.A. 9), cert. den. 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697. The prime concern of the Board is to assure employees the greatest freedom of choice in the selection of their representatives. This Court, in N. L. R. B. v. Gilmore Industries, Inc., 341

F.2d 240, 241, quoted with approval the following statement from Board's decision in Sewell Mfg. Co., 138 N.L.R.B. 66, 70 (1962):

"'Our function, as we see it, is to conduct elections in which the employees have the opportunity to cast their ballots for or against a labor organization in an atmosphere conducive to the sober and informed exercise of the franchise, free not only from interference, restraint, or coercion violative of the Act, but also from other elements which prevent or impede a reasoned choice.'"

Where pre-election conduct of one of the parties has the undesirable effect of unduly influencing its result, the Board has set aside such election and ordered a new one. The Board has striven to conduct elections in an atmosphere in which employees are free from pressure, coercion and undue influence from either the employer or the union. The Board has determined that elections must take place under "laboratory conditions" to enable employees to express their uninhibited desires. N. L. R. B. v. Blades Manufacturing Corporation, supra; N. L. R. B. v. Houston Chronicle Publishing Company, 300 F.2d 273 (C.A. 5); Kearney & Trecker Corp. v. N. L. R. B., 210 F.2d 852 (C.A. 7), cert. den. Kearney-Trecker Emp. Local 1083 v. N. L. R. B., 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed. 649.

█ The Board disapproves of an employer's unilateral conferring of economic benefits upon his employees immediately prior to a representation election. It has been held that it is an unfair labor practice in violation of Section 8(a) (1) of the Act. (Section 158(a) (1), Title 29, U.S.C.) to confer such benefits upon employees with the purpose of destroying their freedom of choice or by action calculated to have that effect. National Labor Relations Board v. Exchange Parts Co., 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435; N.L.R.B. v. Frantz and Company, 361 F.2d 180 (C.A. 7); Indiana Metal Products Corp. v. National Labor Relations Board, 202 F.2d 613 (C.A. 7); National

Labor Relations Board v. Pyne Molding Corp., 226 F.2d 818 (C.A. 2). See also, Medo Photo Supply Corp. v. N.L.R.B., 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007. It is not necessary that conduct which interferes with the freedom of choice in an election actually constitute an unfair labor practice.

 The Board agreed with the Regional Director's conclusion that "the Employer's action in dealing directly with employees and granting a benefit during the critical period (prior to the election) constituted interference with the election," warranting setting aside the election. The respondent insists that the adoption of the rules was merely a "routine decision" to correct any misunderstanding of prior company rules. However, the clarification of such prior work rules did confer a benefit on the majority of drivers who were not missing runs and assured greater fairness in future assignments. Furthermore if the company had considered the matter of a routine nature, there would be no need to go through the rather formal procedure of organizing a workers' committee to draft the rules and of then calling a ratification meeting of all the drivers. Such a procedure seems calculated to have an effect on the choice of the employees in the election which took place two weeks after the meeting. Respondent did not explain why the change could not have been made after the election. We therefore conclude that the Board was exercising its lawful discretion when it decided to set aside the first election and that its findings are supported by substantial evidence.

The respondent's second assignment of error deals with the Board's certification of the union following the second election. The respondent claims that the appropriate unit included all truck drivers, and that the seven out-of-town drivers had a community of interest with the other drivers. The union contended that their ballots should not be counted because, operating out of town, they were not included within the appropriate bargaining unit as stipulated by the parties. If their ballots and the eighteen ballots, whose challenges the Board overruled, were counted, the outcome of the election might have been effected. In the consent election agreement, the parties stipulated that the appropriate bargaining unit included "all production and maintenance employees including truck drivers at *Tennessee Packers, Inc., Clarksville, Tennessee Plant.*" (Emphasis added.)

Three of these seven drivers resided in Atlanta, Georgia, one in Florence, Alabama, two in Huntsville, Alabama, and one in Birmingham, Alabama. These seven performed their services for the company in the cities wherein they resided and their surrounding communities. With the exception of the employee who resided in Birmingham, the duties of these employees were similar. Each day, respondent dispatched a truck from the Clarksville plant to each of the respective cities. The employee driver who resided there would meet the driver at a pre-arranged place, and make local deliveries. The over-the-road driver either slept until the local driver completed his deliveries and then drove the truck back to Clarksville, or drove back in an empty truck that was delivered the previous day. The employee driver who resided in Birmingham, drove his truck to Clarksville each Sunday and Wednesday and picked up a load which he delivered the following day in Birmingham.

Respondent takes the position that the Stipulation for Certification Upon Consent Election included all drivers in the appropriate unit regardless of their residence or base of operation, and that the out-of-town drivers have a community of interest with the Clarksville drivers, and therefore should be part of the same bargaining unit. The Board found that the out-of-town drivers were not intended to be included in the stipulated unit and that they did not have such a community of interest as to warrant their inclusion in the plant unit. The Board therefore refused to count their ballots.

182

Ordinarily when an issue is raised as to the Board's determination of an appropriate bargaining unit, our review is limited to ascertaining whether the Board abused its wide discretion, or acted capriciously, in fixing such a unit. N.L.R.B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575, rehearing den., 331 U.S. 868, 67 S.Ct. 1725, 91 L.Ed. 1872, motion denied, 332 U.S. 823, 68 S.Ct. 158, 92 L.Ed. 398; Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040; N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (C.A. 6), cert. den., 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74. However, when the parties stipulate an appropriate bargaining unit, the Board may not enter into an independent determination of a unit, but is bound by the stipulation. Tidewater Oil Company v. N.L.R.B., 358 F.2d 363 (C.A. 2); N.L.R.B. v. J. J. Collins' Sons, Inc., supra; N.L.R.B. v. Joclin Manufacturing Company, supra. In instances where the inclusion or exclusion of a particular employee within the stipulated unit violates some settled Board policy or statutory provision the Board may take these countervailing policies into account. Tidewater Oil Company v. N.L.R.B., supra. The Board will consider matters of practical significance only if the stipulation is ambiguous. N.L.R.B. v. Joclin Manufacturing Company, supra. Geographical restrictions contained in such stipulations are not to be ignored. Tidewater Oil Company v. N.L.R.B., supra; N.L.R.B. v. Joclin Manufacturing Company, supra. The primary concern in cases where there is a stipulated unit is the determination of the intention of the parties.

The unit under discussion herein included "truck drivers at Tennessee Packers, Inc., Clarksville, Tennessee Plant." The language itself seems unambiguous in setting up a geographical limitation on the appropriate bargaining unit. It is limited to truck drivers at the Clarksville plant. If the parties had intended to include all truck drivers wherever located it would have been simple for the language to so indicate. The stipulation could have been to the effect that the unit included "all production and maintenance employees at Tennessee Packers, Inc., Clarksville, Tennessee Plant, and all truck drivers." But the stipulation reads to the contrary. No Board policy is violated by such a limitation, and the parties are bound by their stipulation.

However, even if we held that the stipulation was ambiguous, the Board's finding that the lack of a community of interest between the Clarksville and out-of-town drivers did not warrant the latter's inclusion within the unit is supported by substantial evidence. Section 160(e), Title 29, U.S.C. If the evidence is susceptible of two or more inferences we are not at liberty to draw an inference different from the one drawn by the Board even though it may seem more plausible and reasonable to us. Universal Camera Corporation v. N.L.R.B., supra; N.L.R.B. v. Walton Manufacturing Company, supra. Reviewing the evidence in this case, the Board was justified in concluding that the out-of-town drivers did not have a community of interest with the Clarksville drivers. The only contact the out-of-town drivers had with the Clarksville drivers was when they met to exchange or deliver trucks. Because of the distances involved it would be difficult for the out-of-town drivers to attend union meetings. Therefore the Board did not err when it concluded that the physical separation of the out-of-town drivers and the Clarksville drivers precluded a finding of a community of interest sufficient to include the out-of-town drivers within the appropriate bargaining unit.

There is substantial evidence to support the action of the Board in its certification of the union and in its finding that the respondent violated Section 8(a) (5) and (1) of the Act (Section 158(a) (5) and (1), Title 29, U.S.C.)

by refusing to bargain collectively with the union.

The Board's petition for enforcement will be granted.