**LIPMAN MOTORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
and
**Amalgamated Laundry Workers, Joint Board, Amalgamated Clothing Workers of America, AFL–CIO, Intervenor.**

Nos. 222–23, Dockets 35813, 71–1554.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1971.

Decided Nov. 4, 1971.

Jay S. Siegel, Hartford, Conn. (Siegel & O'Connor, Hartford, Conn., of counsel), for petitioner.

Jack H. Weiner, Washington, D. C., Atty. (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Deputy Asst. Gen. Counsel, on the brief), for the N.L.R.B.

Aaron J. Carr, New York City (Jacob Sheinkman, New York City, on the brief), for Intervenor.

Before FRIENDLY, Chief Judge, CLARK, Associate Justice,* and KAUFMAN, Circuit Judge.

KAUFMAN, Circuit Judge:

Lipman Motors, Inc., petitions this Court for review of an order of the National Labor Relations Board requiring it to bargain with the Amalgamated Laundry Workers. The Company argues that the Board's certification of the Union, which underlies the determination that the Company violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 159, by refusing to bargain, is invalid. The Union also petitions for review of the Board's order, on the ground that the Board abused its discretion in denying the Union a "make-whole" remedy. Were it not for the Company's contention that the Board's failure to consider the "whole" record vitiates the certification of the Union, this would be a routine representation election case presenting questions of the Board's discretion to regulate elections and the right to an administrative hearing. The disposition, nevertheless, is clear—we reject the positions of both the Company and the Union, deny their petitions and grant the Board's cross-petition for enforcement of its order.

Lipman Motors is a Hartford, Connecticut, automobile dealership. On February 26, 1970, the Board conducted a representation election in a unit comprised of the Company's mechanics, bodymen and service department employees.[1] Twenty-eight employees voted in favor of representation by the Union, nine voted against representation and one ballot was challenged.

---

* United States Supreme Court, retired, sitting by designation.

1. The Company and the Union, with the approval of the Acting Regional Director, entered into a "Stipulation for Certification Upon Consent Election." This stipulation waives all objections to the holding of the election or the composition of the bargaining unit, but does not affect the Board's post election procedures. See 29 C.F.R. § 102.62(b).

The Company promptly filed objections to the election on the grounds that the Union had misrepresented to the employees that they would be eligible for a pension if the Union were elected, even if the Company failed to agree; and that the Union had conducted a poll prior to the election which unduly coerced the employees.[2] After conducting an *ex parte* investigation of the election, *see* 29 C.F.R. § 102.69(c), the Acting Regional Director filed his report recommending that the Board overrule the Company's objections. Thereupon, the Company reiterated its position in exceptions to the report filed with the Board. But the Board, finding that the exceptions "do not raise any substantial issues of fact or law which would require overruling the Regional Director's recommendations or the holding of a hearing," adopted his findings and certified the Union as the statutory bargaining representative of the employees without a hearing.

Seeking to obtain judicial review of the Board's certification,[3] the Company refused to bargain with the Union. A complaint issued charging the Company with unfair labor practices in contravention of Section 8(a) (1) and (5), and the Board, invoking its "rule against relitigation" in again refusing to grant a hearing, entered summary judgment against the Company.

## I.

The Company claims that the Board should have invalidated the election because of Union misrepresentations, citing the well-established standard of Hollywood Ceramics Company, 140 NLRB 221, 224 (1962).[4] We disagree. Hollywood Ceramics, recently approved by us in Bausch & Lomb, Inc. v. N. L. R. B., 451 F.2d 873 (2 Cir. 1971), is an outgrowth of the Board's policy of regulating pre-election campaigns to ensure that representation elections are conducted under "laboratory conditions" and that employees exercise a free and informed choice. *See* General Shoe Corporation, 77 NLRB 124 (1948). The Company, from the time of its initial objections to the election, consistently has maintained that the Union misled the employees into believing that they would be eligible for the Union's standard pension plan without the Company's agreement if the Union were elected. Although the Regional Director found on the basis of conflicting evidence that there was no such misrepresentation, he also found, and the Company admits,[5] that management was aware of the Union statements a full week before the election. In the circumstances of this dispute, this finding is decisive of the Company's claim.

One of the important elements of the *Hollywood Ceramics* test is that the misrepresentation occur "at a time which prevents the other party or parties from making an effective reply." That one week was sufficient time for the Company to merely inform the employees that any benefits promised by the Union were

2. Although in form the Company listed three objections, the last objection was merely a conclusory statement based upon factual allegations in the first two.

3. The only procedure to obtain judicial review of a Board order certifying a statutory bargaining representative is to invite an unfair labor practice charge by refusing to bargain. The certification and the record of the Regional Director's investigation are included in the transcript of the entire record reviewed by the court which reviews the unfair labor practice order. See 29 U.S.C. §§ 160(e), 159(d).

4. "We believe that an election should be set aside only where there has been a mis-

representation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election. (Footnote omitted.)"

5. Harvey Lipman, the Company Vice President, admitted in an affidavit filed with the Acting Regional Director that an employee had informed him of the Union statements approximately one week before the election.

indeed contingent upon the Company's agreement during collective bargaining seems to us to be self-evident.[6]

Accordingly, we need not tarry over whether the Acting Regional Director's finding, later adopted by the Board, that there was no misrepresentation is supported by substantial evidence or, if there was a misrepresentation, whether it would come within the *Hollywood Ceramics'* test of materiality. *See* Bausch & Lomb, *supra,* at 146–150.

## II.

The Company's second challenge to the certification is grounded on events at a Union meeting held on February 24, two nights before the election. These events are best described by the findings of the Acting Regional Director:

> * * * Near the end of the meeting, and prior to Union Agent Harold Biging's calling for nominations for an observor at the Board election, Biging asked if anyone wanted to say anything, express an opinion, or speak for the Company or the Union. There was no reply. He then asked, "Is there anyone now who feels he can't vote for the Union? If there is let him speak up." There was a slight pause and someone in the group shouted "* * * Let's see who's for it." At that point just about everyone present raised his hand, and there were a few shouts of enthusiasm. There was no count taken, no tally was drawn and no ballots were used. It is clear that the show of hands was in response to the "* * * Let's see who's for it" stimulus from the floor.

The Company argues that this "poll" requires us to set aside the election, citing Offner Electronics, Inc., 127 NLRB 991, 992 (1960). In *Offner* the Board set aside an election where the employer had conducted a secret-ballot straw poll prior to the election. The opinion included the following broad language:

> * * * after the Board directs a representation election, or the parties agree to a Board-conducted election, the responsibility to conduct a secret ballot election for the resolution of the question concerning representation rests solely with the Board, and any secret balloting or polling of the employees on the representation issue by the parties, or by others on a party's behalf * * * may be used by an innocent party as a basis for setting aside the Board election.

We do not agree that *Offner* is apposite to this case, but in concluding as we do, we neither approve nor disapprove the Board's current position that the rationale of *Offner* applies only to employer-conducted polls.[7]

█ The spontaneous show of hands "in response to the '* * * Let's see who's for it' stimulus from the floor," a bit reminiscent of the college rally on the eve of the big game, is hardly conduct which "rendered employee free choice impossible." *See Offner Electronics* at 992. The employees here were not confronted with the pressure of a formal straw poll,

---

6. The Company argues in its brief that there was insufficient time to reply because "[t]he pension plan involved the Laundry Workers Union and existed, if at all, in an industry totally unrelated to that of the Employer here." But it was not · necessary for the Company to confirm all the details of the Union's plan before it replied.

The Company also argues that the alleged misstatements were repeated at a Union meeting just two days prior to the election. Even if two days were not sufficient time to reply to this latter statement, our conclusion that the Company could and should have replied to the prior Union statements would not be affected. We note, moreover, that the Company, which had ready access to the thirty-eight employees at a moment's notice and did not have to do any research to refute the alleged position of the Union, easily could have replied within the intervening forty-eight hours. *Compare* Bausch & Lomb, *supra,* at 876.

7. Because the union ordinarily does not have the power of the sword or purse, there is some merit to the Board's argument that a union poll may not be as coercive as an employer poll. But it does not necessarily follow that the Board should tolerate any deliberate coercion.

conducted by the Union representative, with the ayes and nays carefully recorded. We cannot say that the Board abused its discretion in determining that the Union meeting did not interfere with "laboratory conditions." [8]

### III.

Our conclusion, of course, is based upon the assumption that the Acting Regional Director's description of the events in question is factually correct. Normally we would inquire whether his findings, adopted by the Board, were supported by substantial evidence. But, when none of the parties raises a substantial and material factual issue in its objections to the Regional Director's report, the Board, without a hearing may adopt those findings, and those findings are then conclusive on the reviewing court. See 29 U.S.C. § 160(e); 29 C.F.R. § 102.62(e).[9]

The Company claims, however, that there were substantial and material factual issues which entitled it to a hearing, either before the Board certified the Union or before it entered its unfair labor practice order in summary fashion. In its exceptions to the Acting Regional Director's Report, the Company alleged that both employer and employee affidavits submitted to the Acting Regional Director established that the Union had misrepresented the conditions relating to pension plan coverage. The Company also alleged that the Union solicited the

showing of hands and compelled "the employees present to publicly divulge what their vote would be. * * *"

A hearing is not required, however, "unless by *prima facie* evidence the moving party presents substantial and material factual issues which, if resolved in its favor, would warrant setting aside the election. * * *" Polymers, Inc. v. N. L. R. B., 414 F.2d 999 (2d Cir. 1969), cert. denied, 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970). Conclusory allegations questioning the ultimate findings of the regional director are not sufficient. See also N. L. R. B. v. Tennessee Packers, Inc., 379 F.2d 172, 178 (6th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967).

The Company's claim for a hearing on the misrepresentation issue is clearly ill-founded. This is an instance where the alleged factual dispute, centering as it does on what was said and not on when it was said or when the Company learned of the statements, would not warrant setting the election aside even if the dispute were resolved in the Company's favor. As we have set forth in our earlier discussion, timing, which here works against the Company, is an essential element of the *Hollywood Ceramics* test.

Nor is the Company entitled to a hearing on the polling issue. Its bald assertion that the Union conducted the poll is not supported by any specific factual allegations controverting the Acting Re-

---

8. Assuming the existence of substantial evidence to support the Board's factual determinations, abuse of discretion is the proper standard for reviewing a Board decision to validate or set aside an election. See, e. g., Bausch & Lomb, *supra*, at 877 n. 6; Follett Corp. v. N.L.R.B., 397 F.2d 91, 94–95 (7th Cir. 1968).

9. Section 102.69(e) of the Board's Rules and Regulations, 29 C.F.R. § 102.69(e), in relevant part provides:
   * * * if exceptions are filed, either to the report on challenged ballots or objections, or both if it be a consolidated report, and it appears to the Board that such exceptions do not raise substantial and material issues with respect to the

conduct or results of the election, the Board may decide the matter forthwith upon the record. * * *
Section 10(e) of the Act, 29 U.S.C. § 160 (e), in relevant part provides:
   No objection that has not been urged before the Board * * * shall be considered by the court, * * *. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.
Whether one characterizes the Company's conclusory allegations as "no objection" or as raising no material factual issues, the findings adopted by the Board are conclusive.

gional Director's findings which would lead us to believe the show of hands was not spontaneous. For example, the Company does not charge that the Union, according to a preconceived design, had planted the employee who yelled "Let's see who's for it."

■ Finally, there is no merit to the Company's claim that the Board's "rule against relitigation" deprived it of due process. In an unfair labor practice proceeding based upon a refusal to bargain, the Board is required to reopen the question of certification only when the party requesting the hearing presents newly discovered evidence. *See, e. g.,* Polymers, Inc., *supra,* at 1005; Tennessee Packers, Inc., *supra,* at 179–180. This rule, which is essential to the orderly settlement of labor disputes and the prevention of costly procedural delays, is not dependent upon a prior hearing, but only on the prior opportunity to present any evidence which might require a hearing.

## IV.

■ The Company argues vociferously that the record before the Board and this court is incomplete. The Acting Regional Director in his report relied on several employees' affidavits. These affidavits were not before the Board when it reviewed the report. Accordingly, the Company argues, the Board could not have reviewed the "entire record" as it claimed, and the certification must be vacated. We do not share the Company's views.

Section 102.69(f) of the Board's Rules and Regulations, 29 C.F.R. § 102.69(f) provides:

> The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, all of which, together with the objections to the conduct of the election or conduct affect-

ing the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other documents submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.

Although the Board has stated that a rather similar definition of the record in § 102.68 does not include affidavits such as those in issue here, LTV Electrosystems, Inc., 166 NLRB 938 n. 2 (1967), *enforced,* 388 F.2d 683 (4th Cir. 1968), we are not required to consider this interpretation or resolve the procedural question the Company raises. What is decisive here is that the Company's exceptions, even viewed in the light most favorable to it, do not warrant setting aside the election.[10]

## V.

We are left only with the Union's claim that the Board abused its discretion in denying a "make-whole" remedy. When the Union moved for summary judgment upon the complaint charging the Company with unfair labor practices, it requested that the Board in addition to the traditional bargaining order (1) grant the employees compensatory damages for the monetary losses suffered as a result of the Company's refusal to bargain and (2) require the employees to be assembled to hear an explanation by the General Counsel of the Board and the Union concerning the Company's violations. The Board denied this request and

---

10. We note that if the Company had been afforded a hearing, Section 102.118(b) of the Board's Rules and Regulations requires the written statements of witnesses in a postelection hearing to be produced for the purpose of cross-examination. 29 C.F.R. § 102.118(b). See also N.L.R.B. v. Golden Age Beverage Co., 415 F.2d 26, 34 (5th Cir. 1969).

issued its traditional order requiring the Company to cease and desist from the unfair labor practices, to bargain with the Union upon request and to post appropriate notices.

It is now axiomatic that the Board has broad discretion in fashioning an affirmative remedy under Section 10 (c) to "effectuate the policies of the Act." See, e. g., N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). Recently this Court upheld the Board's refusal to grant monetary damages, noting that "[t]he award of monetary relief for an employer's failure to bargain is an unusual remedy which has been used very sparingly by the Board." Herald Company v. N. L. R. B., 444 F.2d 430, 436–437 (2d Cir. 1971). The Company pursued the only procedural course available to secure judicial review of the Board certification. This commonplace attack on the Board's decision certainly does not warrant a direction by us to the Board to undertake the speculative adventure of fixing damages by "'determining" whether the parties would have reached an agreement if they had bargained in good faith and what the terms of that hypothetical agreement would have been.[11]

The Union in its brief has not asked the Court to require the Board to amend its order to provide for the requested meeting of employees. But we note that in the past this relief also has been limited to undoing the effect of egregious unfair labor practices. See, e. g., J. P. Stevens & Co. v. N. L. R. B., 380 F.2d 292, 305 (2d Cir.), cert. denied, 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 600 (1967). Here too, the Board did not exceed its broad discretion in denying the Union's request.

Petitions for review denied; order enforced.

11. It is by no means clear, and we do not decide whether or not the Board has the power to grant compensatory damages for refusal to bargain.