466 F.2d 748
 81 L.R.R.M. (BNA) 2123, 69 Lab.Cas. P 12,976
 CASCADE CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America, UAW, Intervenor.
 No. 71-1644.
 United States Court of Appeals,
Sixth Circuit.
 Aug. 24, 1972.
 
 Verne W. Newcomb, Jack B. Schwartz, Sabin, Newcomb, Sabin & Meyer, Portland, Or., Martin, Browne, Hull & Harper, Springfield, Ohio, on brief, for appellant.
 Joseph C. Thackery, N.L.R.B., Washington, D.C., Marcel Mallet-Prevost, Asst. Gen. Counsel, William Wachter, N.L.R.B., Washington, D.C., on brief, for appellee.
 Edwin G. Fabre, Detroit, Mich., Stanley Lubin, Asst. General Counsel, Stephen I. Schlossberg and John A. Fillion, Detroit, on brief, for intervenor.
 Before EDWARDS and MILLER, Circuit Judges, and ENGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Cascade Corporation has petitioned this Court to review a decision and order of the National Labor Relations Board upholding the validity of its certification of the intervenor, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), as collective bargaining representative for the employees of the relevant unit at Cascade's Springfield, Ohio plant; finding Cascade guilty of refusal to bargain collectively in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) and (5); and ordering Cascade to bargain collectively with the union. The National Labor Relations Board has filed a cross-petition seeking enforcement of its order.
 
 
 2
 For some years, the employees of Cascade's Springfield, Ohio, plant were represented by an independnt local, Employee's Independent Union of Cascade Corporation. On September 25, 1969, the independent local served notice that it did not intend to review the existing contract which had been negotiated in 1966 and was due to expire December 1, 1969. Bargaining ensued. Apparently there was little progress. On December 1, 1969, the intervenor, UAW, submitted a written demand that it and not the independent be recognized as bargaining agent for the unit. The company did not respond. On December 18, 1969, the UAW petitioned the Board for certification. Cascade and the two unions agreed to a consent election to determine whether Cascade's Springfield employees would be represented by the UAW, by the Employee's Independent Union or by no union at all. On December 16, 1969, the Acting Regional Director approved a "Stipulation for Certification Upon Consent Election" which formally provided for the conduct of the election. The election was held on December 31, 1969. 247 of 250 eligible ballots were cast. Of these 131 voted for the UAW and 116 for the independent local. On January 8, 1970, the company filed objections to union conduct which allegedly affected the outcome of the election. Pursuant to Board Rules and Regulations [29 C.F.R. Sec. 102.69(c)] the Regional Director conducted an investigation.[1] Of the three matters investigated by the Regional Director Cascade relies here on only one - the alleged "substantial and material misrepresentation of facts"-in asserting the invalidity of the certification.
 
 
 3
 The company grounds this objection on two circulars, one distributed by UAW on December 29 and the other on December 31. The first purported to compare the provisions of the expired contract with those of contracts negotiated by the UAW at other comparable area plants. The company before the Regional Director pointed to certain factual errors and material omissions in the comparison. The union replied that the circular was prepared in response to a letter distributed by the employer on December 26 and that it represented the most accurate comparison that could be developed in the limited period available.
 
 
 4
 The second circular (the only one in our view raising a substantial issue) was distributed on the eve and morning of the election. It read:
 
 MESSAGE FROM PORTLAND, OREGON:
 
 5
 Larry Vance, Secretary-Treasurer of Teamster Autotive [sic.] Local 255 reports the following.
 
 
 6
 After many years of Independent Union representation employees in Portland, Oregon voted to affiliate with an International Union.
 
 
 7
 The following is a sample of negotiated rates of pay for certain classifications in the Portland plant:
 
 
 8
 Labor Grade 2-Tool Maker ....$3.85 to $4.60
 
 
 9
 Experimental Mechanic Maintenance Mechanic A which includes such classifications as electrician, etc . . .3.50 to 4.25
 
 
 10
 Labor Grade 4-Assembler A . . .3.45 to 4.10
Automatic Lathe Operator A Labor Grade 5-Burner . . .3.25 to 4.00
Labor Grade 6 Grinder-Storekeeper . . .3.15 to 3.75
Labor Grade 7 Post Drill Operator . . .2.95 to 3.50
Labor Grade 8 Lift Truck Operator . . .2.90 to 3.40
Labor Grade 9 Maintenance Helper . . .2.70 to 3.20
Labor Grade 10 Janitor . . .2.50 to 3.05
 
 
 11
 Effective 8-1-70 fifteen (15cents) cents will be added to the minimum and maximum of each of the classifications.
 
 
 12
 Effective 8-1-71 fifteen (15cents) cents will be added to the minimum and maximum of each of the classifications.
 
 
 13
 An example is a tool maker who would make $4.90 per hour while the janitor would make $3.35 per hour.
 
 
 14
 Teamsters Automotive Local 255 extends fraternal greetings and urges your sincere consideration in joining the mainstream of the American labor movement.
 
 LARRY VANCE
 SECRETARY-TREASURER
 
 15
 TEAMSTERS AUTOMOTIVE LOCAL 255 12/31/69' '
 
 
 16
 Cascade's assertions before the Regional Director regarding this letter were set forth in the affidavit of its attorney, Verne W. Newcomb, submitted on January 19, 1970. First, Cascade characterized as "false and misleading" the statement "after many years of Independent Union representation employees in Portland, Oregon, voted to affiliate with an International Union." The company pointed out that the Portland employees had never been represented by an independent union, admitting, however, that, prior to organization by the teamsters, a "shop committee" had served as a sounding board and device for communication at the Portland plant. The union responded that the committee had performed certain of the functions normally performed by a bargaining agent, had been reorganized as an independent union and appeared on the ballot as such in the representation election held at the employer's plant on February 12, 1969. Second, Cascade objected to the "letter's treatment of 'rates of pay' ", pointing out that labor Grade 4 received $3.45 per hour rather than $3.35 as stated in the circular and asserting that the union had significantly distorted the comparison by carefully selecting the positions discussed and by failing to note differences in the manner of classifying jobs at the two plants. The union acknowledged the $.10 per hour error but stated that the error had been corrected as soon as it was brought to the union's attention and that only approximately thirty uncorrected circulars were actually distributed to Cascade employees. Third, the company asserted that the "letter" was a "forgery," neither authored nor authorized by Larry Vance, secretary-treasurer of the teamster local at the Portland plant, whose name appeared in printed form at the bottom of the circular. This assertion was made on the basis of the Newcomb affidavit to the effect that he had talked with Vance, who had assured him that "he did not write the letter and that he did not in any way authorize the UAW to use his name or that of his local union." The union responded in its non-sworn statement of position that the circular was prepared pursuant to a December 30, 1969, conversation between C.J. Hyde, UAW regional official, and Vance, and that its contents reflect the substance of that conversation. The union argued that the circular did not purport to be a direct communication, observing that the name at the bottom was printed not signed and that the circular opened with the sentence: "Larry Vance, Secretary- Treasurer of Teamsters Automotive Local 255 reports the following." According to the union's unverified statement, Vance indicated to Hyde that "he would be happy to help and support" the union in any way and that it had used this offer by printing a "Message from Portland, Oregon."
 
 
 17
 In conducting his investigation the Regional Director requested the parties to submit statements of their respective positions "together with evidence in support thereof." As far as his report indicates, nothing was submitted to him that could in any way be characterized as "evidence" other than the Newcomb affidavit submitted on January 19, 1970, which, as indicated, recited a conversation with Vance to the effect that he did not write the "letter" nor authorize the UAW to use his name or that of his local union. Although this affidavit was before him the Regional Director made no mention of it in his report to the Board. He simply relied upon the union's unverified assertion that its representative, C.J. Hyde, had telephoned Vance on December 30, 1969, and that the circular was prepared "pursuant to Hyde's conversation with Vance." The Regional Director apparently found from such unverified assertion of the union that Vance had told Hyde in the telephone conversation that he would be happy to help and support the petitioner in any way "and that the petitioner decided to utilize this offer by printing a 'Message from Portland, Oregon.' " It is noteworthy that aside from the Regional Director's reliance upon unsupported assertions as refuting the statements made in an affidavit, the so-called Hyde conversation, even if taken at face value, could hardly be said to constitute authorization on the part of Vance for the use of his name or that of his Local on a circular to be distributed to the Springfield employees. Moreover, the Regional Director's conclusion in effect that a shop committee is substantially the equivalent of an independent union is highly questionable, at least in the absence of a factual showing to this effect-a showing wholly lacking in this case.
 
 
 18
 It may be of course that Vance did actually either expressly or impliedly authorize the use of his name to be appended in the circular, but if he did not it is manifest that the circular was indeed a "forgery," or at least a deceptive piece of campaign propaganda which conceivably could have influenced the election. Both forgeries and deceptive campaign propaganda have frequently been condemned by the Board and by courts alike in connection with representation elections. A forgery has been defined as "[t]he fabrication or counterfeiting of evidence. The artful and fraudulent manipulation of physical objects, or the deceitful arrangement of genuine facts or things, in such a manner as to create an erroneous impression or a false inference in the minds of those who may observe them. See Burrill, Circ. Ev. 131, 420." Black's Law Dictionary, 779 (4th Ed. 1951).
 
 
 19
 We cannot agree with the Regional Director's cavalier assumption that in any event the circular is innocuous and raises no substantial factual issue. If Vance's name and that of his Local were used without his authority this fact alone may be sufficient to invalidate the election considering the consistency with which forgeries and other deceptive campaign tactics have been condemned. See N.L.R.B. v. Trancoa Chemical Corp., 303 F.2d 456, 461 (1st Cir. 1962). In the first place it is clear from the record that the Regional Director was incorrect in concluding that the circular was distributed at a time when the company had a reasonable opportunity to make a reply to any false or misleading statements. The distribution was made in the waning minutes before the election was to begin and there was no opportunity either properly to evaluate the contents of the circular or to check on any statement contained in it. The Regional Director's finding that the Vance statement contained no departure from the truth is also difficult to comprehend on the basis of the present record. He concedes that the statement in the circular that the Portland employees had been represented for many years by an independent union is false, but he concludes that since the employees had been represented by a "socalled shop committee" the statement was immaterial and did not exceed the bounds of permissible campaign propaganda, a finding, as already pointed out, lacking in evidentiary support. He brushes this misstatement off as "a distinction without a difference." Without facts, this appears to us to be an arbitrary conclusion. In the absence of evidence in a particular case it would appear that there could very well be many important differences between an informal shop committee and an independent union. An independent union requires employee membership, the payment of dues, and a governing constitution and by-laws, whereas a shop committee is simply an informal group having none of these basic characteristics.
 
 
 20
 In reviewing the Regional Director's report in which he recommended certification of UAW as the bargaining representative of the Springfield employees, the Board simply adopted the findings and conclusions of the Regional Director upon the ground that the exceptions to his report raised no material issue of fact or of law which would warrant reversal or require a hearing. We are aware of the fact that there are decisions of this Court indicating that in cases involving consent elections the exceptions to the Regional Director's report should specify the findings that are controverted, and show what evidence will be presented to support a contrary finding or conclusion. See N.L.R.B. v. Louisville Chair Co., 385 F.2d 922 (6th Cir. 1967); N.L.R.B. v. Tennessee Packers, Inc., etc., 379 F.2d 172 (6th Cir. 1967).
 
 
 21
 It is also true that the exceptions to the report in this case on their face do not perhaps literally comply with this strict standard. Nevertheless, it is clear upon examination of the exceptions in the context of the objections filed to the election and considered by the Regional Director, that they do raise factual issues primarily going to the circulars.[2] Many reasons suggest themselves why the rule to its fullest extent as stated in Louisville Chair Company and Tennessee Packers should not be applied here.
 
 
 22
 *****
 
 
 23
 * * *
 
 
 24
 *****
 
 
 25
 * * *
 
 
 26
 *****
 
 
 27
 * * *
 
 
 28
 The court in the Tennessee Packers case while giving lip service to the rule just stated inferred that the rule applies to cases where the exceptions merely dispute the Regional Director's reasoning and conclusion. 379 F.2d at 179. In contrast, in the context of this case the exceptions go primarily to factual issues and not to the reasoning processes of the Regional Director.
 
 
 29
 In the Louisville Chair case the court specifically found that the so-called misleading campaign propaganda was not disseminated at a time or in a manner calculated to deprive the company of an opportunity to reply, whereas the exact opposite is true here as to the Vance circular.
 
 
 30
 While the formal exceptions in the present case do not refer to the Vance circular or proffer specific evidence on the forgery issue, it is significant that the Newcomb affidavit was submitted to the Regional Director and was presumably also before the Board as a part of the record on review. The Regional Director's report demonstrates that he accepted without question the unverified and unsupported statements of the union although he had called upon both parties to submit "evidence" to support their respective positions.
 
 
 31
 Further the Regional Director's report made no specific finding on the issue of whether the Vance circular was forged or whether the use of Vance's name had been authorized. Had he made a specific finding that the circular was not a forgery or that Vance had authorized the use of his name, either expressly or impliedly, there would be more reason to require the strict application of the rule requiring specific exceptions and a proffer of proof to be made.
 
 
 32
 In regard to the December 29th circular we find no material issue of fact to have been raised nor do we quarrel with the finding that this particular circular does not exceed the permissible limits of campaign propaganda. It should be pointed out that this circular was distributed within sufficient time for the company to make an adequate investigation and response. We have also reviewed the evidence in the record in regard to the Trial Examiner's findings that the alleged picket line misconduct was not of such proportions as to justify the company in refusing to bargain. We think it is clear that there was substantial evidence to support the Trial Examiner's finding in this respect.
 
 
 33
 It is our conclusion that the equities of this case can be resolved only by remanding the case to the Board with directions that it conduct or authorize in an appropriate way an evidentiary hearing to determine all of the issues pertaining to the Vance circular. The hearing should embrace not only the forgery issue but also the question as to whether any material misrepresentations of fact were made in the circular itself so as to have had an impact upon the election. This latter aspect of the inquiry should be addressed particularly to the issue whether the statement in the circular with respect to the employees having been represented by an independent union was false, and if so, what effect such misstatement had upon the election itself.
 
 
 34
 The petition of Cascade Corporation for review is therefore granted, the cross petition of the Board seeking enforcement of its order is denied, and the action is remanded to the National Labor Relations Board for further proceedings consistent with this opinion.
 
 
 35
 EDWARDS, Circuit Judge (dissenting).
 
 
 36
 The remand of this case to resolve a fact dispute which appears to have been decided by something less than normal due process has much attractiveness. It seems to me, however, that both the statute and the applicable regulations, 29 U.S.C. Sec. 159(c)(4) (1970); 29 C.F.R. Sec. 102.69(e) (1972), required Cascade to phrase this dispute by timely objection to the findings of the Regional Director filed before the N.L.R.B. As I read this record no objections were filed which presented the specific issue upon which it is now proposed that we remand. Cf. N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Div., 379 F.2d 172 (6th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); N.L.R.B. v. Difco Laboratories, Inc., 389 F.2d 663 (6th Cir.), cert. denied, 393 U.S. 828, 89 S.Ct. 91, 21 L.Ed.2d 98 (1968).
 
 
 37
 In N.L.R.B. v. Tennessee Packers, Inc., supra, this Court said:
 
 
 38
 "To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to reply on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof." 379 F.2d at 178.
 
 
 
 *
 Honorable Albert J. Engel, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Cascade filed three objections to the election, asserting:
 "(1) The UAW caused substantial and material misrepresentations of fact to be made in circulars distributed to employees immediately prior to election.
 (2) The UAW engaged in coercive acts, including threats, to cause employees to desist from opposing the UAW.
 (3) The UAW engaged in electioneering in a place immediately adjacent to the place here the election was conducted on the day of the election."
 
 
 [2]
 The pertinent portions of Cascade's exceptions to the report read as follows:
 EMPLOYER'S EXCEPTIONS TO REPORT ON ELECTION, OBJECTIONS TO ELECTION, AND RECOMMENDATIONS TO THE BOARD, RECEIVED MARCH 9, 1970
 (Case No. 9-RC-8371)
 Exception No. 1 The Employer excepts generally to the Regional Director's conclusion that Employer's Objection No.
 
 
 [1]
 "raises no substantial or material issue affecting the results of the election" and to his recommendation that the Objection be overruled (Report, page 9). The Employer takes specific exception, for the reasons given, to the following factual conclusions of the Regional Director in support thereof:
 (a) The findings that the Petitioner's statements "do not exceed the bounds of permissible campaign propaganda," were not of the type to interfere with or otherwise impede the employees' free choice in the election," and "were not a substantial departure from the truth."
 (b) The finding that the Petitioner's statements here involved were not made "at a time when the other party could not make an effective reply" (Report, page 8).
 Exception No. 2. The Employer excepts generally to the Regional Director's conclusion that Employer's Objections Nos. 2 and 3 raise "no substantial or material issue affecting the results of the election" and to his recommendations that the Objections be overruled (Report, pages 10, 11).