**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MEDICAL ANCILLARY SERVICES, INC., Respondent.**

No. 72-1732.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1973.

Decided April 30, 1973.

Jerome H. Brooks, Director, Region 7, N. L. R. B., Detroit, Mich., Roger Hartley, Atty., N. L. R. B., Washington, D. C., for petitioner; Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., on brief.

Robert S. Rosenfeld, Southfield, Mich., for respondent; Keywell & Rosenfeld, James DiMeglio, Southfield, Mich., on brief.

Before CELEBREZZE, MILLER and LIVELY, Circuit Judges.

PER CURIAM.

The case is before the Court upon the petition of the National Labor Relations Board for enforcement of its order of February 1, 1972, finding the Medical Ancillary Services, Inc. (company) in violation of the National Labor Relations Act by its refusal to bargain with the union (Office and Professional Employees International Union, Local 10, AFL–CIO) as the certified representative of the company's employees.

On July 8, 1971, pursuant to a Stipulation for Certification Upon Consent Election executed by the company and the union, an election was conducted among the company's employees. Fifty-one ballots were cast for representation by the union and 49 were opposed to such representation. Following objections to the election filed by the company the Regional Director, pursuant to the Board's rules and regulations, conducted an administrative investigation during which the parties were afforded an opportunity to submit evidence bearing on the issues. The evidence consisted of five affidavits submitted by the company and 10 written statements taken from witnesses by the Regional Director (not of course in the presence of any representative of the company). The Regional Director on July 28, 1972, informed the company that absent withdrawal of the objections he would issue

a report recommending to the Board that it overrule the company's objections. The company declined to withdraw the objections and on August 3 the Director issued his Report recommending that the company's objections be overruled in their entirety and that the Board certify the union as the exclusive bargaining representative of the company's employees. The company's motion for reconsideration filed on August 4, supported by affidavits from two employer representatives, was overruled by the Regional Director on August 5, upon the ground that the proffer of new evidence was untimely and would not in any event warrant a result contrary to the result reached in the Director's August 3rd report. The company filed with the Board exceptions to the Director's report, supported by the affidavits presented to the Director and by four additional employees' affidavits, requesting that the election be set aside and a new election ordered. The Board on November 15 adopted the Regional Director's report and recommendations and certified the union.[1] It concluded that the company's exceptions raised no substantial issue of fact or law to warrant reversal of the Regional Director's report.[2] The company, commencing about October 12, refused to bargain with the union and in answer to an unfair labor practice complaint issued against it by the Board admitted its refusal to bargain, but defended on the ground that the certification was invalid for the reasons urged in its objections to the election. General Counsel in the unfair labor practice proceeding moved for summary judgment on the pleadings which the Board granted. At the same time it found that the company had violated § 8(a)(5) and (1) of the Act by its refusal to bargain. We are of the opinion from an examination of the record and applicable authorities that the

Board erred in failing to find that the company was entitled to a hearing before the Board on its exceptions to the election, and consequently in finding the company guilty of violating the Act.

■ We are aware that the Board has a wide discretion in determining whether a hearing is required to review the administrative findings of the Regional Director in cases of consent elections. Yet this discretion is subject to judicial review where the exceptions to the Director's report raise "substantial and material factual issues." This subject was fully covered by the opinion of this court in N. L. R. B. v. Tennessee Packers, Inc., 379 F.2d 172 (6th Cir.), cert. denied 389 U.S. 958, 88 S.Ct. 338, 19 L. Ed.2d 364 (1967), from which we quote:

"The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. N. L. R. B. v. National Survey Service, Inc., supra [361 F.2d 199 (7 Cir.)]; N. L. R. B. v. J. R. Simplot Company, supra [322 F.2d 170 (9 Cir.)]; Macomb Pottery Company v. N. L. R. B., supra [376 F.2d 450 (7 Cir.)]. Mere disagreement with the Regional Director's reasoning and conclusions do not raise 'substantial and material factual issues.' This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof.

1. The Board's decision and order are reported at 195 NLRB, No. 50 (1972).

2. This was true even though the Board did not have before it any of the state-

ments or affidavits upon which the Director relied in recommending certification.

The purpose behind the rule which requires a hearing only when "substantial and material factual issues" are raised is to avoid lengthy and protracted proceedings, and eliminate unnecessary delays in certifying the results of an election. If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act. The cases relied upon by respondent in support of its contention that it is entitled to a hearing, all deal with cases in which the court determined that 'substantial and material factual issues' were raised, and therefore held that the Board erred in not ordering a hearing. United States Rubber Company v. N. L. R. B., 373 F.2d 602 (C.A.5); N. L. R. B. v. Capital Bakers, Inc., 351 F.2d 45 (C.A.3); N. L. R. B. v. Joclin Mfg. Co., 314 F.2d 627 (C.A.2); N. L. R. B. v. Lord Baltimore Press, Inc., 300 F.2d 671 (C.A.4); N. L. R. B. v. Dallas City Packing Co., 230 F.2d 708 (C.A.5); N. L. R. B. v. Poinsett Lumber and Mfg. Co., 221 F.2d 121 (C.A. 4). In N. L. R. B. v. Sidran, 181 F.2d 671 (C.A.5), cited by respondent, the Court could only have held that the Board erred in denying a hearing if 'substantial and material factual issues' were raised." 379 F.2d at 178.

■■ We interpret this decision and the authorities cited as *requiring* the Board to grant a hearing if the exceptions do indeed raise substantial and material issues of fact and "show what evidence will be presented to support a contrary finding or conclusion." If these criteria are met no formalistic "request" for a hearing is necessary. In such cases it is our view that a request for a hearing is necessarily implied.[3]

In this case the company's exceptions are detailed, specific and factual as to material issues. They also proffer specific evidence to be relied upon. We think this is self-evident from the exceptions themselves which we reproduce in their entirety in the appendix to this opinion together with the accompanying additional affidavits.

Being of the opinion that the company's exceptions fully complied with the standards for a Board hearing prescribed by its own Rules and Regulations as well as by the applicable authorities, the Board's application for enforcement of its order of February 1, 1972 is denied, the said order and the order approving and adopting the Regional Director's Report, are vacated, and the action is hereby remanded to the Board with directions that the company be afforded a full adversary hearing upon its exceptions to the Regional Director's Report either before the Board itself or a hearing officer. Any findings emerging from such hearing shall be subject to applicable review procedures.

## APPENDIX

### EMPLOYER'S EXCEPTIONS TO REGIONAL DIRECTOR'S REPORT AND RECOMMENDATIONS ON OBJECTIONS

#### STATEMENT OF FACTS

Pursuant to a Stipulation for Certification Upon Consent Election executed by the parties and approved by the Regional Director for the Seventh Region of the National Labor Relations Board on June 17, 1971, an election by secret

---

3. A request for a hearing should be readily inferred in a case, such as the present one, where the exceptions to the Director's Report are not only specific but are supported by a proffer of evidence and where the Board has merely adopted the recommendation of the Director without having before it any of the evidence upon which the Director relied. Under such circumstances it is difficult to see how the Board could achieve fundamental fairness in discharging its responsibility to review the Director's recommendation without according an adversary hearing.

ballot was conducted on July 8, 1971, among the employees of the Employer.

Upon the conclusion of the election a Tally of Ballots was served upon the parties which showed the following results: One hundred (100) valid votes were counted. Fifty-one (51) votes were cast for the Union. Forty-nine (49) votes were cast against the Union. Thus, one (1) vote was the deciding factor in this election.

On July 15, 1971, the Employer filed Objections to Conduct Affecting the Results of Election and attached the affidavits contained in Appendix 1–5. The Employer's objections were as follows:

1. That on July 8, 1971, immediately prior to the election, union supporter Larry Kuzak stated to various employees eligible to vote in the election that Yvonne Tilwick, a fellow employee who was off because of illness, was not going to receive the disability insurance which the employee handbook stated she was entitled to.

2. That on July 8, 1971, immediately prior to the election, union supporter Mary Tavtigian stated to various employees eligible to vote in the election that:

(a) Yvonne Tilwick was not being paid the disability insurance she was entitled to because the company deliberately "screwed up" her claim so that she would not be paid.

(b) That Elisabeth Rohrmaier telephoned this same Yvonne Tilwick and ordered her to vote or else be discharged.

(c) That Norma Harvey, an employee in the designated bargaining unit was not paid for a day off, July 6, 1971, and was given no reason for not being paid.

(d) That some of the girls in her department had worked over forty (40) hours in a week and had not received overtime pay for doing so.

3. That these statements were a substantial departure from the truth.

4. That the two individuals who made these statements had no factual bases on which to make such statements and, therefore, made them with the deliberate intention of misleading voters.

5. That these material misrepresentations were intentionally made immediately prior to the election when the Employer was unable to effectively neutralize them.

6. That these misrepresentations materially affected the attitude of several voters, in that they caused them to doubt the integrity of the Company and, thus, influenced their vote creating a significant impact on the outcome of the election.

As a result of the filing of these objections, an investigation was conducted under the direction and supervision of the Regional Director. The Regional Director, in his "Report and Recommendations on Objections" dated August 3, 1971, concluded that the Employer's objections should be overruled in their entirety, and that the Board should issue a Certification of Representation reflecting that the petitioning union had received a majority of the valid ballots cast in the election. It is to this Recommendation that the Employer takes exception, on the basis that the Regional Director's conclusion cannot be sustained by the evidence and, furthermore, that new evidence was discovered by Company investigators subsequent to the Regional Director's investigation which, when examined, requires a contrary conclusion.[1]

---

1. Appendixes 1 through 5 were signed and submitted to the Regional Director at the time the Objections were filed on July 15, 1971.

Appendixes 6 and 7 contain evidence which, in part, could only have been dis-covered by company investigators subsequent to the Regional Director's investigation and were submitted to the Regional Director on August 4, 1971.

Appendixes 8, 9, 10 and 11 contain evidence newly discovered from employee

## EXCEPTIONS

### EXCEPTION 1

The employer's Objection No. 1 states that on the day of the election Larry Kuzak, an employee and widely known union supporter, informed various employees that employee Yvonne Tilwick was not going to receive the disability insurance which the Employer had promised to provide for her, and that this statement was a substantial departure from the truth which had a significant impact upon the election.

The Regional Director states that his investigation disclosed that, on the day of the election, Kuzak approached two employees and commented to them that he had heard that Tilwick had not received her disability insurance, and that this was a statement of fact since Tilwick did not receive her first check until July 9, 1971, the day after the election. The Regional Director then stated that Kuzak was merely repeating what he had heard from others, which was clearly hearsay and not a material misrepresentation of fact; and, since this was not a substantial departure from the truth, the Objection should be overruled.

The evidence submitted by the Employer, in the form of the two affidavits of the employees Kuzak talked to, demonstrates that Kuzak did not merely state that Tilwick had not as yet received her disability insurance, but that he represented the fact to be that *she was not going to receive* the disability pay which the Company had promised to pay employees. (Appendixes 1 and 2) Thus, Kuzak attacked the credibility of the Company, a major issue in any organization drive. Where Kuzak got the idea to make this statement is of no consequence. The fact was, as is demonstrated by the attached affidavit, that Yvonne Tilwick has and will continue to receive all the benefits she is entitled to. (Appendix 5) The employees to whom this statement was made possessed no

independent knowledge of the facts surrounding it. They believed it and it affected their vote. (Appendixes 1 and 2) This misrepresentation of fact was spread by Kuzak at a time so close to the time set for the election that the Employer had no opportunity to reply and negate the effects of it. This statement, which admittedly affected the votes of at least two employees in an election in which the outcome could have been changed by one vote, was certainly material in that, if true, it would have demonstrated a lack of credibility on the part of the Employer. The fact that it was proven false makes it a misrepresentation. Kuzak made a statement which was a substantial departure from the truth and, thus, was a material misrepresentation of fact to employees voting in an election at a time when the Employer was unable to make an effective reply; and this misrepresentation was one which not only could reasonably be expected to have significant impact upon the election, but which, indeed, did have such an impact. Hollywood Ceramics Company, Inc., 140 NLRB 221 (1962), 51 LRRM 1600.

### EXCEPTION 2

The Employer's Objection No. 2 stated that on the day of the election Mary Tavtigian, an employee who had identified herself as strongly favoring the union, made several statements to various employees which were substantial departures from the truth and which had a significant impact upon the outcome of the election.

Mary Tavtigian stated that Yvonne Tilwick, who was ill, had received no disability payment from the insurance company because Medical Ancillary Services, Inc. had deliberately "screwed up" her claim so that she would not be paid.

The Regional Director states that his investigation disclosed that Tavtigian informed several employees that Yvonne

statements subsequent to the receipt of the Regional Director's Decision, and are

submitted to the National Labor Relations Board for the first time as such.

Tilwick had not yet received her disability insurance check, but he declares that there is no substantial proof to indicate that any comment was made to the effect that the Employer was deliberately trying to prevent Yvonne Tilwick from receiving her benefits. It is difficult to understand how the affidavit of a fellow employee can be summarily dismissed by the Regional Director. (Appendix 3) Moreover, other employees have since come forward and have signed affidavits that they were also told that the Company was deliberately not going to pay Yvonne Tilwick the disability insurance benefits to which she was entitled. (Appendixes 10 and 11) The statement is false; as previously stated, it has been established that the Company has provided the insurance to which Yvonne Tilwick is entitled.

The Regional Director states that his investigation revealed that Tavtigian commented to several employees that the Employer had talked with Tilwick and asked her to vote in the election if it was possible, but that Tavtigian did not attribute to the Employer any threat of discharge to Tilwick if she did not vote.

However, an employee has stated in her affidavit that she was told by Tavtigian that a telephone conversation had taken place between Elisabeth Rohrmaier and Yvonne Tilwick, during which Elisabeth had informed Yvonne Tilwick that, if she did not come in to vote, the Company would find some way to get rid of her. (Appendix 3) Another employee also stated that she had been told that Elisabeth Rohrmaier had threatened Yvonne Tilwick by telling her that, if she did not come in to vote, the Company would find a way to discharge her. (Appendix 8) This fact was demonstrated by affidavit to be untrue. (Appendix 5)

There is clear evidence contrary to the findings of the Regional Director that Mary Tavtigian did attribute to the Employer the threat of discharge to Yvonne Tilwick if she did not vote.

In response to the Employer's charge that Tavtigian had stated that one of the employees, Norma Harvey, had not been paid for a day for which she should have been paid, even though she had taken the day off, the Regional Director stated that, "Tavtigian merely made the comment to one employee that several of the employees in her department were upset because Harvey had not been paid for a day for which she believed she should have been paid."

However, another employee, in her affidavit, states that what Tavtigian told her was that Norma Harvey was not paid for the day, was not given any reason why she was not paid, and had told Tavtigian that she was glad that Friday was her last day. (Appendix 3) Another employee subsequently stated that she had been told this as well. (Appendix 11)

The Regional Director states that his investigation revealed that "Tavtigian merely stated to at least two employees that four of the nine employees in the Evaluation Department felt that they had not received all of the pay which was due to them."

The affidavit of one employee makes it clear that what was said was that four out of nine girls *were* paid what they *were* entitled to and the rest were not. (Appendix 3) The affidavit of another employee supports this. (Appendix 4) Other employees also have subsequently informed the Employer's investigators that they were told that employees had not received the overtime pay to which they were entitled. (Appendixes 9, 10 and 11) This was not true. Employees did receive all overtime payments to which they were entitled. (Appendix 5) The Regional Director's finding, again, runs contrary to the evidence in his possession at the time he made his conclusion, as well as the newly discovered evidence.

The Regional Director goes on to state that elections are not only invalidated because of the conduct of the parties, but also because of third-party conduct which interferes with the rights of the employees in the selection of a bargaining representative. He states, however,

that normally the conduct of individual employees will be deemed interference sufficient to set aside an election only when they are acting as a representative of, or with knowledge and consent of one of the parties to the election. If there is no showing of agency, the Regional Director states that, if the conduct of an employee, as a third party, creates an atmosphere incompatible with the employees' freedom of choice and there is such a general atmosphere of confusion and fear of reprisal as to render impossible the rational, uncoerced selection of a bargaining representative, then the election may be set aside.

The Regional Director concludes that the conduct of Mary Tavtigian did not create such an atmosphere of confusion as to render impossible the holding of a free and untrammelled election.

The statements made by both Kuzak and Tavtigian did create such an atmosphere. The affidavits attached hereto clearly indicate that the statements they made were false statements of fact and influenced the votes of individuals in several cases; indeed, in far more cases than were actually needed to alter the outcome of the election.

The theory behind the rule not requiring an agency relationship to set aside an election, if a general atmosphere of confusion and fear are created, is based on the premise that, regardless of who created such an atmosphere or who has knowledge of it, it has presumably destroyed the integrity of the election and has, thus, disrupted the laboratory conditions which a fair election necessitates. Here we do not need such a presumption that the election was interfered with. The evidence demonstrates that such was the case. Thus, the election should be set aside, regardless of whether or not an agency relationship is present.

Furthermore, what had not been divulged in any previous investigation was subsequently learned by Company investigators, that is that Mary Tavtigian was the Union's Chief Stewardess, a fact previously undiscovered not only by the Company investigators, but also by the Regional Director. Thus, Tavtigian was acting as a representative of the Union at the time she made the statements set out in the Employer's Objections. The agency relationship which the Regional Director found lacking has, thus, been established and Mary Tavtigian's conduct, by itself, is enough to set aside the election. (Appendixes 6 and 7) Vicker's, Inc., 152 NLRB No. 84 (1965), 59 LRRM 1196. This status of Tavtigian was unknown with certainty until after August 3, 1971, when Sandra Malone was made a supervisor and advised the Company investigators of this fact.

The statements made, as demonstrated by the attached affidavits, represented facts as being other than they were and, thus, were a departure from the truth. They were clearly material misrepresentations, in that they caused several individuals to alter their votes in reliance upon them.

These were far more than the inartistically or vaguely worded messages described in *Hollywood Ceramics Company, Inc., supra,* as being inefficient [sic] to warrant the setting aside of an election.

The statements made were more than minor distortions which did not have a significant impact on the election. In essence, they were untrue statements, which, if taken as true by those to whom they were related and who had no independent knowledge of the incidents described to them, indicated that the Employer did not keep its word, treated its employees in a malicious manner, threatened its employees, and cheated them when the opportunity arose for it to do so. Several employees have indicated that these statements materially affected their attitude toward the Company when they voted. (Appendixes 1, 2, 8, 9, 10 and 11)

The Regional Director states that the statements made by Mary Tavtigian were not made by her alone and that

others in the office discussed these subjects. This is of consequence only as far as it admits that others in the office were deeply concerned about the statements Tavtigian was making. The Regional Director states that statements such as these are typical in an election. To the contrary, such misrepresentations are not typical pre-election experience. Moreover, the crux of *Hollywood Ceramics Company, Inc.* is not whether conduct is typical, but whether it is such that the integrity of an election has been impaired. Here it was.

The Regional Director assumes that the employees had independent knowledge of the facts with respect to the statements made and would doubt the validity of such statements, and that, even if they did not possess such knowledge, they would certainly have investigated the validity of the statements.

This assumption flies in the face of the evidence. There is no indication that any employee had independent knowledge of the statements made to them. In fact, there is evidence that several employees believed the statements and did not learn of their falsity until after the election. As stated in the attached affidavits, employees did not check these statements for two reasons: (a) they were nervous about doing so; and (b) they had insufficient time in which to do so since the statements were made so close to the time the polls opened. (Appendixes 8 and 11)

EXCEPTIONS 3, 4, 5 and 6

The Regional Director refers to paragraphs 3, 4, 5 and 6 of the Employer's Objections as objections and states that they are merely conclusionary statements and support the two previously discussed objections. He states that they lack the specificity required of objections and, thus, recommends that they be overruled.

These paragraphs were never intended to operate as separate objections. The fact that the statements made in the previous objections were a substantial departure from the truth, that there was no factual basis for them, and that they were made immediately prior to the election when the Employer was unable to effectively neutralize them, and that these statements resulted in a change in the attitude of several voters causing them to alter their vote, thus creating a substantial impact on the election and, therefore, impairing its integrity, are the only conclusions which the evidence will allow one to reach.

WHEREFORE, it is prayed that the National Labor Relations Board set aside the election of July 8, 1971, and order a new election.

Respectfully Submitted,
KEYWELL AND RO-
SENFELD
/s/ Robert S. Rosenfeld
Attorneys for Employer,
Medical Ancillary Services, Inc.
26300 Telegraph Road
Southfield, Michigan
48076
313–352–8500

Dated: August 18, 1971
[Proof of Service]

APPENDIX 8

AFFIDAVIT

STATE OF MICHIGAN   ⎱
COUNTY OF OAKLAND   ⎰ SS:

GAYLE FRITSCH, being first duly sworn, deposes and says:

1. That I am an employee of Medical Ancillary Services, Inc., a Michigan corporation.

2. That I was eligible to vote in the election held on Thursday, July 8, 1971, to decide whether a majority of employees of Medical Ancillary Services who were in the designated bargaining unit desired to be represented by the Office and Professional Employees International Union.

3. That on Thursday, July 8, 1971, just prior to the commencement of the election, I heard that Elisabeth Rohr-

maier, Vice President in charge of production and quality control, had called a sick employee, Yvonne Tilwick, at her home and threatened that if she did not come in to vote, the company would find a way to discharge her.

4. That on Thursday, July 8, 1971, just prior to the election, I heard that certain employees had not received the overtime pay to which they were entitled.

5. That I believed these statements, and they had a substantial effect upon my view of the company, and thus greatly affected my vote in the election.

6. That I did not check these statements at the time I heard them because I was nervous about doing so, and I did not learn that they were untrue until subsequent to the election.

Further, affiant saith not.

Gayle Fritsch

Subscribed and sworn to before me this . . day of August 1971.

Notary Public, Oakland County, Michigan

My commission expires . . .. -----

## APPENDIX 9

### AFFIDAVIT

STATE OF MICHIGAN  
COUNTY OF OAKLAND } SS:

LINDA McLATCHER, being first duly sworn, deposes and says:

1. That I am an employee of Medical Ancillary Services, Inc., a Michigan corporation.

2. That I was eligible to vote in the election held on July 8, 1971, to decide whether or not a majority of myself and the other employees in the designated appropriate bargaining unit desired the Office and Professional Employees International Union to collectively bargain with our Employer as our representative.

3. That on July 8, 1971, I heard that several employees in the Evaluation Department had not received the overtime to which they were entitled.

4. That I believed this and felt it was unfair, and this materially affected my attitude toward the company when I voted.

5. That subsequent to the election, I learned that this was not true.

Further, affiant saith not.

Linda McLatcher

Subscribed and sworn to before me this ------ day of August, 1971.

Notary Public, Oakland County, Michigan

My commission expires -------

## APPENDIX 10

### AFFIDAVIT

STATE OF MICHIGAN  
COUNTY OF OAKLAND } SS:

JUDY EATMON, being first duly sworn, deposes and says:

1. That I am an employee of Medical Ancillary Services, Inc., a Michigan corporation.

2. That I was eligible to vote in the election held on July 8, 1971, to determine whether a majority of the employees of Medical Ancillary Services who were in the designated bargaining unit desired to be represented by the Office and Professional Employees International Union.

3. That on Thursday, July 8, 1971, prior to the election, I was told that Yvonne Tilwick, a fellow employee, had not yet been paid and was not going to be paid the disability insurance benefits to which she was entitled as an employee of Medical Ancillary Services.

4. That I heard that certain employees had not received all the overtime pay to which they were entitled.

5. That these statements created doubts in my mind about the kind of

**106**

company I was working for at the time I voted in the election.

Further, affiant saith not.

------------
Judy Eatmon

Subscribed and sworn to before me this ------ day of August, 1971.

------------------------------------------
Notary Public, Oakland County, Michigan

My commission expires  -- -- .

## APPENDIX 11

### AFFIDAVIT

STATE OF MICHIGAN ⎱ SS:
COUNTY OF OAKLAND ⎰

LINDA PAWLOWSKI, being first duly sworn, deposes and says:

1. That I am an employee of Medical Ancillary Services, Inc., a Michigan corporation.

2. That I was eligible to vote in the election held on July 8, 1971, to determine whether a majority of the employees of Medical Ancillary Services who were in the designated bargaining unit desired to be represented by the Office and Professional Employees International Union.

3. That on Thursday, July 8, 1971, immediately prior to the commencement of the election, I was told that the company was deliberately not going to pay Yvonne Tilwick, a fellow employee, the disability insurance benefits to which she was entitled.

4. That some employees in the Evaluation Department had not been paid all the overtime pay to which they were entitled.

5. That Norma Harvey, a fellow employee, had not been paid for a day off for which she was entitled to be paid and that she was not given any reason as to why she was not paid.

6. That at the time I was told of these statements, I did not check to verify their truth, since I did not have time before going to vote in which to do so.

These statements affected to a high degree my attitude toward the company and caused me to alter my vote.

7. That I did not find out that these statements were untrue until subsequent to the election.

Further, affiant saith not.

------------
Linda Pawlowski

Subscribed and sworn to before me this --- day of August, 1971.

------------------------------------------
Notary Public, Oakland County, Michigan

My commission expires  -------- .