**PINETREE TRANSPORTATION COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Cross-Petitioner,**

v.

**PINETREE TRANSPORTATION COMPANY, Cross-Respondent.**

Nos. 81–7333, 81–7427.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 1982.

Decided Aug. 17, 1982.

Stanley E. Tobin, Hill, Farrer & Burrill, Los Angeles, Cal., argued, for petitioner; Fred T. Ashley, Hill, Farrer & Burrill, Los Angeles, Cal., on brief.

Elaine Patrick, N. L. R. B., Washington, D. C., argued, for respondent; William Wachter, N. L. R. B., Washington, D. C., on brief.

Before WALLACE, NELSON and CANBY, Circuit Judges.

WALLACE, Circuit Judge:

On April 2, 1981, the National Labor Relations Board (the Board) entered an order holding Pinetree Transportation Company (Pinetree) in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (5), for its refusal to bargain with the Automotive Employees, Laundry Drivers and Helpers, Local 88, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). The Board ordered Pinetree to cease and desist

from its violations, to post appropriate notices, and to recognize and bargain with the Union upon request. Pinetree filed this petition for review under 29 U.S.C. § 160(f); the Board cross-applied for enforcement pursuant to 29 U.S.C. § 160(e).

Although Pinetree's petition formally seeks review of the unfair labor practice proceedings, Pinetree does not dispute the fact that it has refused to bargain with the Union. Pinetree claims that the Board improperly set aside a representation election in which the Union lost, and then ordered a second election in which the Union won. As a result, the Union was certified as the bargaining unit of Pinetree's mechanical and maintenance employees. In order to gain judicial review of the prior representation proceedings, Pinetree was compelled to expose itself to unfair labor practice charges. The validity of the unfair labor practice charges depends on the legality of the Union's certification. *See Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 152, 61 S.Ct. 908, 912, 85 L.Ed. 1251 (1941). We deny enforcement and remand for an evidentiary hearing.

## I

On April 30, 1979, the Union filed a representation petition as part of its effort to unionize Pinetree's mechanical and maintenance employees at its facility in Gardena, California. On June 14, 1979, the Regional Director of the Board issued a Decision and Direction of Election granting the Union's petition, but expanding the bargaining unit to include mechanical and maintenance employees at Pinetree's facilities in Long Beach and Santa Ana, California. A secret ballot election was conducted at Pinetree's three facilities on July 18, 1979. A tally of the ballots cast in that election showed that the Union had lost by a vote of 25 to 17.

The following day, the Union filed five objections to the conduct of the election, one being that Pinetree failed to post the Board's official notices of the election at the Gardena facility "in a conspicuous place where the employees could easily identify and read said notices." The Union later withdrew its other four objections.

Pinetree challenged the Union's objection to the notice posting in a written response to the Regional Director. Included with this written response was the declaration of David Lawson, the supervisor of Pinetree's Gardena facility. Pinetree's response and Lawson's declaration set forth the following facts with respect to the election notice objection: the election notice in question was posted in the upper right-hand corner of the bulletin board regularly used to convey information to employees, which is immediately adjacent to the time clock used by the employees at least four times daily; the notice was posted approximately seven days prior to the election; the top of the notice was approximately nine feet above the floor and the bottom of the notice was approximately eight feet above the floor;[1] the notice was posted so as not to be blocked from view by people standing in front of or around the bulletin board or by vehicles frequently parked around it; Lawson himself, who was five feet, ten inches in height and had ordinary eyesight, could easily read every word on the notice; and during the week preceding the election, Lawson observed more than three-fourths of the employees at the Gardena facility reading the notice. The Regional Director also knew that twenty-one of the twenty-three eligible voters at the Gardena facility voted in the election.

On September 12, 1979, the Regional Director issued a Report on Objections in which he stated: "From an examination of a notice posted with its top 102 [inches] above the floor, I conclude that placement of the notice at this height makes the entire notice unreadable, or at the least, causes employees of average height considerable difficulty in reading the entire notice and, thus, discourages employees from reading the entire notice." He concluded that post-

---

1. Pinetree stated in its response that the bottom of the notice was approximately eight feet, four inches above the ground, while Lawson stated in his declaration that it was seven feet, four inches above the ground.

ing the notice at that height denied employees access to information vital to the conduct of the election and recommended that the Union's objection be sustained and that the election be set aside.

On October 8, 1979, Pinetree filed exceptions to the Regional Director's Report on Objections with the Board, contending that the Regional Director erred when he found that the Gardena notice had been improperly posted. Attached to Pinetree's exceptions was a copy of the Lawson declaration which had been submitted to the Regional Director. In neither its original response filed with the Regional Director nor its exceptions to the Regional Director's Report on Objections which were filed with the Board, did Pinetree assert that a hearing should be held by the Regional Director.

On November 29, 1979, the Board adopted the Regional Director's findings and recommendations and directed that a second election be held. On January 9, 1980, the second election was held and resulted in a vote of twenty-six in favor of the union and nineteen against, with no challenged ballots. A week later, the Board certified the Union as the exclusive bargaining representative for the unit.

On February 29, 1980, the Union requested that Pinetree bargain with it, but the company refused. On April 11, the Union filed an unfair labor practice charge with the Board, based on Pinetree's refusal to bargain. By a letter dated May 1, Pinetree requested a hearing before an administrative law judge. The Regional Director thereafter issued a complaint alleging re-fusal to bargain in violation of section 8(a)(5) and (1) of the Act. The General Counsel filed a motion for summary judgment claiming that Pinetree was attempting to relitigate issues which were or could have been raised in the underlying representation proceedings. Pinetree opposed this motion contending, among other things, that a hearing should have been held. The Board granted the motion for summary judgment, observing that the issues raised "were or could have been litigated in the prior representation proceeding" and that there had been no offer "to adduce at a hearing any newly discovered or previously unavailable evidence."

## II

This petition for review and cross-application for enforcement raise the question whether a party in a representation proceeding waives its right to an evidentiary hearing if it fails to assert its right to such a hearing in its objections or fails otherwise to make a timely request for such a hearing to the Board or Regional Director. In the present case, Pinetree made no such assertion or request at any stage of the representation proceedings, but rather first claimed denial of its right to such a hearing in the unfair labor practice proceedings that followed. The Board argues that Pinetree's failure to seek a hearing in the representation proceedings constitutes a waiver of this objection for all purposes, including judicial review. The Board erroneously asserts that support for this position is found in decisions of this and other circuits.[2] Pinetree

---

**2.** For example, the Board's reliance on such decisions as *Vari-tronics Co. v. NLRB*, 589 F.2d 991 (9th Cir. 1979); *NLRB v. Children's Baptist Home*, 576 F.2d 256 (9th Cir. 1978); *NLRB v. W. S. Hatch Co.*, 474 F.2d 558 (9th Cir. 1973); and *NLRB v. Rexall Chemical Co.*, 370 F.2d 363 (1st Cir. 1967), is misplaced. Each of these cases is easily distinguishable from the present one. In the latter two, a party to an unfair labor practice proceeding attempted to litigate an issue concerning the fairness of the election that it had failed to raise at a prior stage of the representation proceedings. In *Vari-tronics*, the employer attempted to raise an objection concerning the fairness of an election after the five-day period allowed for filing objections in a consent election. *Vari-tronics Co. v. NLRB*, *supra*, 589 F.2d at 993; 29 C.F.R. § 101.-19(a)(4), 102.69(a) (1981). In *Baptist*, the employer made objections to the election during the course of the underlying representation proceedings, but failed to reassert these objections to the Board during the subsequent unfair labor practice proceedings. These cases hold that under the doctrine of exhaustion of administrative remedies, *see United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), and pursuant to the Board's relitigation policy, 29 C.F.R. § 102.67(f) (1981); *see Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), a party must make a timely objection to

mistakenly argues that our decisions in *NLRB v. Belcor, Inc.*, 652 F.2d 856 (9th Cir. 1981), and *Vari-tronics Co. v. NLRB*, 589 F.2d 991 (9th Cir. 1979), indicate that the objections it submitted to the Regional Director and Board should be deemed a request for a hearing. In neither *Belcor* nor *Vari-tronics*, however, is there any indication that the parties seeking an evidentiary hearing failed to request such a hearing in their objections before the Regional Director or the Board. In both cases the question was whether the factual issues raised by the parties were so substantial or material that the Board should have ordered a hearing. *NLRB v. Belcor, Inc., supra*, 652 F.2d at 859; *Vari-tronics Co. v. NLRB, supra*, 589 F.2d at 993. From our reading of the cases cited by both parties, it is clear that we have not yet directly confronted the question before us.

Among the cases cited to us and those we have located in our independent research, the only one directly on point is the Sixth Circuit decision in *NLRB v. Medical Ancillary Services, Inc.*, 478 F.2d 96 (6th Cir. 1973) (*Medical Ancillary*). There the court reasoned that no formal request for a hearing is necessary when a party's objections meet the criteria for a hearing as required under the Board's regulations. Although we are not bound by another circuit's decision, *Gunther v. County of Washington*, 623 F.2d 1303, 1319 (9th Cir. 1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), we look to their reasoning for guidance. *Id.* We think it prudential "to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow." *Aldens, Inc. v. Miller*, 610 F.2d 538, 541 (8th Cir. 1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 272 (1980). We therefore turn to analyze the virtue of the position taken by the Sixth Circuit.

■ The responsibility for conducting election proceedings to select collective bargaining representatives has been delegated by Congress to the Board. 29 U.S.C. § 159. In monitoring that election process, the courts have afforded the Board wide discretion in determining whether an election and the attendant proceedings have been fairly conducted. *NLRB v. Claxton Mfg. Co.*, 613 F.2d 1364, 1365 (5th Cir. 1980); *see Anchor Inns, Inc. v. NLRB*, 644 F.2d 292, 296 (3d Cir. 1981). However, this discretion is not unlimited. The administrative regulations provide that when a party objecting to an election raises "substantial and material factual issues" before the Regional Director or the Board, either may direct an evidentiary hearing. 29 C.F.R. § 102.69(d) & (f) (1981). It is now well-settled, however, that an evidentiary hearing must be held when a party's objections raise substantial material issues of fact. *Sonoco Products Co. v. NLRB*, 399 F.2d 835, 839 (9th Cir. 1968); *Anchor Inns, Inc. v. NLRB, supra*, 644 F.2d at 296; *NLRB v. Claxton Mfg. Co., supra*, 613 F.2d at 1365; *Methodist Home v. NLRB*, 596 F.2d 1173, 1178 (4th Cir. 1979); *Medical Ancillary, supra*, 478 F.2d at 99. Although the regulations use discretionary terms such as "may" and "appears to the Regional Director," we, along with other courts, have held that due process requirements entitle a party to an evidentiary hearing where there is a substantial material issue of fact relating to the validity of a representation election. *See, e.g., Sonoco Products Co. v. NLRB, supra*, 399 F.2d at 839; *NLRB v. Claxton Mfg. Co., supra*, 613 F.2d at 1365.

■ In order to be entitled to a hearing, the objecting party must bear a heavy bur-

the conduct of an election in both the representation proceedings and the unfair labor practice proceedings to preserve the issue for further review. As stated in the regulations, "Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding." 29 C.F.R. § 102.67(f) (1981). *Baptist* extends this rule to require

parties to reassert their objections in subsequent unfair labor practice proceedings to preserve the issue for judicial review.

The present case differs from these because here we must decide exactly what steps a party must take to make a request for a hearing, not what the consequences are for failure to make such a request at the appropriate stage in the proceedings.

den. The party seeking a hearing must demonstrate clearly that factual issues exist which can only be resolved by an evidentiary hearing. "'The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. ... Mere disagreement with the Regional Director's reasoning and conclusions do[es] not raise "substantial and material factual issues." '" *NLRB v. Griffith Oldsmobile, Inc.*, 455 F.2d 867, 868 (8th Cir. 1972), *quoting NLRB v. Tennessee Packers, Inc., Frosty Morn Division*, 379 F.2d 172, 178 (6th Cir.), *cert. denied*, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967) (*Tennessee Packers*). Nor is it sufficient for a party seeking an evidentiary hearing to question merely the interpretation or inferences placed on the facts by the Regional Director. *NLRB v. J. R. Simplot Co.*, 322 F.2d 170, 172 (9th Cir. 1963). As we stated in *NLRB v. Kenny*, 488 F.2d 774 (9th Cir. 1973), "To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director." *Id.* at 776, *quoting Tennessee Packers, supra*, 379 F.2d at 178.

It is significant that neither the regulations nor the decisions which have interpreted them have required an objecting party to request specifically an evidentiary hearing. Rather, the cases, as we read them, imply that the right to a hearing attaches immediately once the objecting party supplies prima facie evidence presenting substantial material factual issues. For example, we have stated: "If there is a dispute between the facts as presented in the regional director's report and the facts as presented in the exceptions, the dispute must be resolved through a hearing. Factual disputes cannot be resolved on the basis of the regional director's *ex parte* investigation." *NLRB v. Belcor, Inc., supra*, 652 F.2d at 859 (emphasis in original).

The right which can be inferred from our language in *Belcor* has been expressly recognized by the Sixth Circuit:

We interpret ... the authorities cited as *requiring* the Board to grant a hearing if the exceptions do indeed raise substantial and material issues of fact and "show what evidence will be presented to support a contrary finding or conclusion." If these criteria are met no formalistic "request" for a hearing is necessary. In such cases it is our view that a request for a hearing is necessarily implied.

*Medical Ancillary, supra*, 478 F.2d at 99 (emphasis in original) (footnote omitted). The Sixth Circuit also found that prerequisites for a hearing were met where the exceptions to the Regional Director's report were not only specific but were also supported by an offer of evidence and where the Board had merely adopted the recommendation of the Director without having before it any of the evidence upon which the Director relied. *Id.* at 99 n.3. "Under such circumstances it is difficult to see how the Board could achieve fundamental fairness in discharging its responsibility to review the Director's recommendation without according an adversary hearing." *Id.*

 We conclude that this result is appropriate. The objecting party's right to a hearing is established by presenting prima facie evidence of substantial material factual issues. By "material" we mean that the facts offered by the objecting party, if accepted as true, must warrant a conclusion in favor of that party on the issue of the validity of the election. *See Anchor Inns, Inc. v. NLRB, supra*, 644 F.2d at 296. When that evidence is presented, Board regulations require the Director and the Board to give consideration to the need for an evidentiary hearing. 29 C.F.R. § 102.69(d) & (f) (1981). Where the evidence establishes that substantial material factual issues exist, we agree with the Sixth Circuit that a request for a hearing must be inferred and a hearing held. We could alternatively conclude that it would be an abuse of discretion for the Board not to hold an evidentiary hearing under these circumstances, even where no formal demand is made. Indeed, it appears to us that the filing of papers establishing substantial material factual issues effects a demand for a

hearing and that waiver cannot be inferred from the mere failure to make a formal request.

■ In the present case, Pinetree's objections were specific and were supported by Lawson's declaration. When the Board adopted the Regional Director's recommendation, it could not have reviewed the evidence upon which the Regional Director relied, since there was no indication in the Regional Director's report that the Union had supplied any contrary evidence. If Pinetree presented prima facie evidence of a substantial and material factual issue, the constraints of the Board's own regulations and the cases interpreting them left the Board with only one option—that of holding an evidentiary hearing. Of course it would have been better had Pinetree made a specific written request for an evidentiary hearing. However, we see no valid reason to develop an intercircuit conflict on this issue. We, therefore, will agree with the Sixth Circuit that in a situation, such as that before us, a request for a hearing is necessarily implied, if the objecting party's exceptions raise substantial and material factual issues. We now discuss whether Pinetree's exceptions did.

### III

■ In its efforts to ensure a fair election, the Board tries to provide the employee electorate with information about both the merits of the election and employee rights under the Act. The Board relies heavily upon its Notice of Election to achieve this purpose. Besides informing employees of the time and place of the election, the Notice of Election discusses such matters as the voting unit, the secrecy of the election, and the assurance that the Board, as a neutral government agency, will protect the employee's free choice in the election. The Regional Director, and the Board in summarily adopting his recommendation, concluded that the posting of the notice with its top 102 inches above the floor, denied employees access to information necessary to assure free expression of voter preference. In its objections, Pine-

tree presented several facts tending to negate any inference that the employee electorate was uninformed about the merits of the election issues or their rights under the Act.

Pinetree pointed out that there was a very high voter turnout. Although such evidence suggests that the employees could and did read the time and place of the election on the Notice of Election, it is quite possible that because the notice was posted at an unusually high position on the bulletin board, they were unable to read easily all the other information on the Notice. Nor is the inference suggested necessarily conclusive because the employees could have been advised of the time and place of the election by other means.

However, Pinetree also offered Lawson's declaration in which he stated that he himself could easily read the Notice as posted and that he saw approximately three-quarters of the employees looking at the notice as if they were reading it. Of course, such facts can only raise the inference that the employees read the entire notice and were properly informed about the election. Whether this inference is the correct one could only be tested by examining each employee. Whether the employees were or were not aware of the posted information is the kind of issue that ordinarily cannot be resolved by an ex parte investigation. *See Valley Rock Products, Inc. v. NLRB,* 590 F.2d 300, 303 (9th Cir. 1979); *Alson Mfg. v. NLRB,* 523 F.2d 470, 472 (9th Cir. 1975). This follows because it is usually essential that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of each witness whose subjective state of mind is at issue. *Id.* at 472.

In the present case, the Regional Director's only finding contrary to the facts presented by Pinetree was that placement of a notice with its top 102 inches above the floor made the entire notice unreadable or sufficiently unreadable to discourage employees from reading the entire notice. He based this determination on his personal off-premises examination of a notice posted

at that height. Such an ex parte investigation is not only inappropriate to decide the issue here in question, but is itself of questionable reliability. Without a hearing, Pinetree argues, questions remain as to whether the lighting in the Regional Director's office was as good as that at the Gardena facility, whether the Regional Director enjoys normal eyesight, how far away the Regional Director was standing from the notice at the time he made his evaluation, and the extent to which he was able to read the notice.

It is clear that Pinetree raised substantial and material issues of fact regarding the readability of the Notice of Election in its objections before the Regional Director and Board. Therefore, we decline to order enforcement of the Board's order. Instead, we set aside the order and remand to the Board for further proceedings consistent with this decision.

ENFORCEMENT DENIED; CASE RE-MANDED.